UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMERICAN ECONOMY INSURANCE COMPANY, | Case No. C15-899 RSM |
| Plaintiff, | ORDER GRANTING MOTION FOR SUMMARY JUDGMENT OF PLAINTIFF AMERICAN ECONOMY INSURANCE COMPANY |
| v. | |
| CHL, LLC, | |
| Defendant. | |

## I.      INTRODUCTION

This matter comes before the Court on Plaintiff American Economy Insurance Company ("AEIC")'s Motion for Summary Judgment. Dkt. #17.  For the reasons set forth below, the Court GRANTS the Motion.

## II.      BACKGROUND

Defendant CHL, LLC, owns an apartment complex in Seattle known as the "Masters Apartments."  Dkt. #17 at 3.  From January 28, 1999 to January 28, 2005, AEIC provided commercial property insurance for the Masters Apartments.  Dkt. #17 at 2-3; Dkt. #19 at 5-60; Dkt. #19-1 at 1-32.  As part of that insurance, AEIC insured CHL against loss or damage caused by "collapse" of the building or part of the building.  Dkt. #17 at 3; Dkt. # 19 at 50-51.

From January 28, 1999 to January 28, 2002, that term was undefined in the insurance policy. Dkt. #17 at 1; Dkt. #19 at 50-51.  From January 28, 2002 to January 28, 2005, that term was defined to mean actual falling down of the building or part of the building.  Dkt. #17 at 3 n.5; Dkt. #19 at 2.

In 2014, renovation work was done on the Masters Apartments, and significant decay of the building's rim joists was discovered. Dkt. #18 at 18-23.  CHL began repairing the damaged joists, while the apartment complex remained occupied.  Dkt. #18 at 3.  CHL then submitted a claim to AEIC for the damage to the building.  Dkt. #19-1 at 34.  AEIC sent a structural engineer, Jim Perrault, to inspect the building.  Dkt. #18 at 2,14.  Perrault concluded that several of the decayed rim joists suffered from "substantial structural impairment."  Dkt. #18 at 26-33.  Perrault defined that term as meaning that: (1) the joists could not support the necessary loads to meet the building code; and (2) based on the joists' weakened load-bearing ability, the building could be classified as a "dangerous building" by a building inspector.  Dkt. #18 at 26. Perrault estimated that several of the joists had reached the point of "substantial structural impairment" sometime between 1999 and 2002.  *See* Dkt. #18 at 27-33.

AEIC denied CHL's claim.  Dkt. #19-1 at 36.  AEIC believed that, under Washington law, the undefined term "collapse" in the policies from 1999 to 2002 required that actual falling down of the building or a part of the building be imminent.  Dkt. #19-1 at 43.  AEIC stated that it would reopen the claim if the then-pending Washington Supreme Court case of *Queen Anne Park Homeowner's Association v. State Farm Fire and Casualty Company*, 352 P.3d 790 (Wash. 2015) (en banc) provided a new definition of "collapse" that did not require that actual falling down be imminent.  Dkt. #19-1 at 36.  After CHL indicated that it disagreed with AEIC's definition of collapse, AEIC filed this suit for declaratory relief.  *See* Dkt. #1.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT OF PLAINTIFF AMERICAN ECONOMY INSURANCE COMPANY- 2

After the Washington Supreme Court decided *Queen Anne Park*, AEIC again denied CHL's claim.  Dkt. #19-1 at 54. When CHL expressed its continued disagreement over the issue, AEIC filed this motion for summary judgment.  *See* Dkt. #17.

### III.    DISCUSSION

#### A.  Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Material facts are those which might affect the outcome of the suit under governing law.  *Anderson*, 477 U.S. at 248.  In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial."  *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the nonmoving party.  *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004).  The Court must draw all reasonable inferences in favor of the nonmoving party.  *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994).  However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Further, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."  *Anderson*, 477 U.S. at 252.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B. Analysis**

As an initial matter, the Court notes that there is no genuine dispute as to any material fact—Defendant CHL's Opposition contains a section entitled "Disputed Facts" but CHL is really only disputing the conclusions that AEIC draws from the underlying, undisputed, facts. *See* Dkt. #22 at 3-4.   As such, the Court need only determine whether AEIC is entitled to judgment as a matter of law.

AEIC argues that it is entitled to an order stating that it is not liable for damage to the Masters Apartments under the "collapse" provision of its January 28, 1999 to January 28, 2002 insurance policies because the undisputed facts show that the building did not "collapse" during that time period.  *See* Dkt. #17 at 12-13.   AEIC also argues that, even if its coverage decision was incorrect, that decision was reasonable, as was AEIC's claims-handling, and so AEIC did not act in bad faith.  *See id.*

As noted above, the insurance policies from January 28, 1999 to January 28, 2002 do not define the term "collapse."   There has been a fair amount of dispute in various states over how to interpret the word "collapse" in property insurance contracts.   Some states have taken a narrow view, finding a collapse only when all or part of the building has actually fallen down. *See, e.g.*, *Olmstead v. Lumbermens Mut. Ins. Co.*, 259 N.E.2d 123, 126 (Ohio 1970).   Other states have taken a slightly less restrictive view, and found that actual falling down is not necessary, as long as falling down is imminent.  *See, e.g.*, *Fantis Foods, Inc. v. N. River Ins. Co.*, 753 A.2d 176, 183 (N.J. Super. Ct. App. Div. 2000).   This interpretation is meant to encourage property owners with buildings in imminent danger of falling down to make repairs. *See id.* at 182.  Other states have taken an even wider view, and not required a showing that falling down was imminent, but rather just that the building had a "substantial impairment of

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT OF PLAINTIFF AMERICAN ECONOMY INSURANCE COMPANY- 4

structural integrity." *See, e.g.*, *Am. Concept Ins. Co. v. Jones*, 935 F. Supp 1220, 1227 (D. Utah 1996).

At the time AEIC first denied coverage in this matter, and at the time AEIC filed this lawsuit, the Washington Supreme Court had not weighed in on the proper interpretation of "collapse." *See Sprague v. Safeco Ins. Co. of Am.*, 276 P.3d 1270, 1272 (Wash. 2012) (en banc). That changed with the *Queen Anne Park* case.

The *Queen Anne Park* case involved a similar factual scenario to the present case. In 2009, it was discovered that the Queen Anne Park condominiums suffered from hidden decay. *Queen Anne Park*, No. C11-1579, 2012 WL 5456685, at *1 (W.D. Wa. Nov. 8, 2012). The Homeowners Association filed a claim with the insurance company that had provided "collapse" coverage for the Queen Anne Park condos from 1992 to 1998. *Queen Anne Park*, 763 F.3d 1232, 1234 (9th Cir. 2014). The HOA argued that the decay had reached the point of "substantial impairment of structural integrity" during the coverage period, and thus was covered under the collapse provision. *Id.* The insurance company denied the claim, and the HOA sued in federal court. *Id.*

The HOA filed a motion for summary judgment, which was denied by the district court. *See Queen Anne Park*, No. C11-1579, 2012 WL 5456685, at *4. The district court found that the Washington Supreme Court would most likely either adopt a strict "fallen down" approach to collapse, or, at the very least, would require imminent danger of falling down. *Id.* Since the condos were still standing over thirteen years after the insurance policies expired, the district court found that the HOA had not shown that the buildings were in imminent danger of falling down during the coverage period. *Id.*

The HOA appealed to the Ninth Circuit.  The Ninth Circuit then certified the question of how to define "collapse" to the Washington Supreme Court.  *See Queen Anne Park*, 763 F.3d at 1235.  The Washington Supreme Court held that "collapse" meant "substantial impairment of structural integrity." *Queen Anne Park*, 352 P.3d at 794.  The court went on to define "structural integrity" as "a building's ability to remain upright" and "substantial impairment" as a "severe impairment." *Id.* (internal quotation marks omitted).  The court then summed up by saying that collapse meant "substantial impairment of the structural integrity of all or part of a building that renders all or part of the building unfit for its function or unsafe and, in this case, means more than mere settling, cracking, shrinkage, bulging, or expansion." *Id.*

With this definition in hand, the Ninth Circuit affirmed the district court's decision. *Queen Anne Park*, 633 F. App'x 415, 416 (9th Cir. 2016) (unpublished).  The Ninth Circuit acknowledged that the district court had not applied the correct definition of collapse.  *Id.* at 417.  However, the Ninth Circuit found that it was implausible that, at the time of insurance coverage, the walls had become "unfit for [their] function or unsafe," given that seventeen years after the insurance coverage ended, the building was still standing.  *Id.* (alteration in original) (internal quotation marks omitted).

AEIC argues that this case is indistinguishable from *Queen Anne Park*, and so the result here should be the same as the result there.  *See* Dkt. #17 at 2.  CHL, however, points to two problems with that argument.  *See* Dkt. #22 at 9-12.  The first problem is that the definition of collapse in the *Queen Anne Park* line of cases comes from a binding Washington Supreme Court case, but the application of that rule to the facts in the case comes from a non-precedential, unpublished Ninth Circuit opinion. Dkt. #22 at 9.  Therefore, the result of *Queen*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Anne Park* does not dictate the result here.  The second problem is that, in the present case, AEIC's own structural engineer, Jim Perrault, stated that there was "substantial structural impairment" of the rim joists at the Masters Apartments.  Dkt. #18 at 27-33.  According to CHL, that is all that is needed to meet the Washington Supreme Court's definition of collapse.  Dkt. #22 at 10-12.

However, the definition of substantial structural impairment that Perrault used was different from the Washington Supreme Court's definition of substantial impairment of structural integrity.  Perrault was defining the term with regards to the building code.  *See* Dkt. #18 at 26.  While CHL is correct that the building code is designed to protect safety, *see* Dkt. #22 at 10-12, that does not mean that a failure to meet the building code necessarily means a building is "unsafe" in the way the Washington Supreme Court used that term.  Even the fact that a building inspector might classify a building as a "dangerous building" based on its impaired load-bearing capacity does not mean that the building is necessarily in a state of collapse.  Importantly, the use of the word "unsafe" by the Washington Supreme Court was a gloss on the first definition it had given for a building in a state of collapse: a building suffering from a "severe impairment" of its "ability to remain upright."  *See Queen Anne Park*, 352 P.3d at 794.

While the Court acknowledges that it is not bound by the unpublished Ninth Circuit decision in *Queen Anne Park*, the Court nevertheless finds the reasoning in that decision sound.  Much like the Ninth Circuit in that case, this Court concludes that it is implausible that the Masters Apartments had a severe impairment of their ability to remain upright between 1999 and 2002.  The building remained standing without renovation until 2014.  In fact, even when the decay was discovered in 2014, after 12 more years of deterioration, tenants were allowed to

remain in the building while renovations were done, without any shoring put in place.  Dkt. #18 at 3.  The Court therefore concludes that AEIC is entitled to judgment as a matter of law that the Masters Apartments did not reach a state of collapse between 1999 and 2002, and so AEIC correctly denied CHL's collapse claim.

Since the Court has concluded that AEIC correctly denied coverage on CHL's collapse claim, the Court also concludes that AEIC's coverage decision and claims-handling were reasonable.

## IV.    CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

1)  Plaintiff American Economy Insurance Company's Motion for Summary Judgment, (Dkt. #17), is GRANTED.

2)  American Economy Insurance Company is not liable for damage to the Masters Apartments under the "collapse" provisions of its January 28, 1999 to January 28, 2002 insurance policies.

3)  American Economy Insurance Company's coverage decision and claims-handling were reasonable.

DATED this 7th day of July 2016.


RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE